UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| ROBERT RUDYNSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:10-CV-209 CAN |
| | ) | |
| MICHAEL J. ASTRUE | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

On May 24, 2010, Plaintiff, Robert Rudynski ("Rudynski"), filed his complaint asking this Court to reverse and remand the administrative law judge's ("ALJ") decision of December 15, 2008. On September 2, 2010, Rudynski filed his opening brief. On October 26, 2010, Defendant, Michael J. Astrue, Commissioner of Social Security filed his response. On November 9, 2010, Rudynski filed his reply. This Court now enters its ruling based upon the consent of the parties and 28 U.S.C. § 636(c).

**I.   PROCEDURE**

On June 20, 2006, Rudynski filed an application for disability insurance benefits ("DIB") alleging a disability beginning on January 10, 1999. This claim was initially denied on August 22, 2006, and again on December 26, 2006, upon reconsideration. On November 18, 2008, Rudynski testified at a hearing before an ALJ. On December 15, 2008, the ALJ issued his decision denying Rudynski's application for DIB. The Appeals Council denied review of the ALJ's opinion, making the ALJ's decision the final determination of the Commissioner. Rudynski then filed his complaint in this Court pursuant to 42 U.S.C. § 405(g).

**II.   ANALYSIS**

A.  Facts

Rudynski was born on November 2, 1956. He was 43 years old at the time of the alleged onset of disability and was 52 years when the ALJ rendered his decision. Rudynski completed high school. Rudynski was previously an iron worker. On February 10, 1999, Rudynski hit a dog while riding either a motorcycle or four-wheeler, but he did not go to the emergency room. As a result of the accident, Rudynski sustained a broken right hand and complained of hip, back, shoulder, and neck pains.

1.  Medical Evidence

At the time of the alleged onset of disability, Rudynski's treating physician was Dr. Del Gardner. Dr. Gardner saw Rudynski on February 11, 1999, the day after the accident. At that time Rudynski complained of hip, back, neck, and shoulder pain. Rudynski saw Dr. Gardner three more times through March 25, 1999. On March 25, 1999, Rudynski again saw Dr. Gardner and reported improvement. Dr. Gardner diagnosed Rudynski with low back strain and recommended continuing with medication and starting physical therapy.

Rudynski then began treatment with Dr. J. Halstead on May 6, 1999 complaining of pain in his low back, left leg, and right index finger. Dr. Halstead conducted an examination and noted no superficial tenderness in Rudynski's back. Dr. Halstead noted that the x-rays taken at the time of that accident did not show anything remarkable and ordered an MRI. On May 21, 1999, Rudynski returned to Dr. Halstead to learn the results. Dr. Halstead noted that the MRI showed Rudynski's upper lumbar spine was normal, there was slight intradiscal degeneration at L4-L5, and at L5-S1 there was a focal left central disc protusion which displaced the left S1 nerve. Dr. Halstead prescribed Vicodin and recommended epidural injections.

Dr. Ralph Carbone administered two epidural injections on May 26, 1999 and July 23, 1999.  On August 12, 1999, Rudynski returned to Dr. Halstead reporting significant improvement, especially after the second injection.  Dr. Halstead restricted Rudynski's lifting to no more than twenty pounds and advised no repetitive bending and stooping.  Rudynski underwent physical therapy from June 24, 1999 to September 23, 1999.  He was discharged on November 12, 1999 after being contacted and he explained that he had intermittent pain but he was feeling better.

During this same time period Rudynski sought opinions from chiropractor Dr. Timothy Gurrola, from orthopedist Dr. Henry DeLeeuw, and from physicians at the University of Chicago.  On June 11, 1999, Dr. Gurrola noted that Rudynski was not completely recovered from his injuries and was still disabled.  On July 14, 1999, Dr. DeLeeuw saw Rudynski noted that Rudynski experienced a limited range of motion and there was disc degeneration and herniation at L5-S1.  Dr. DeLeeuw prescribed Naprosyn and recommended that Rudynski continue with his lower back exercises.

All of the treating physicians agreed that Rudynski was totally disabled at least until July 1999.  After that point each physician noted some improvement, but none of them believed that Rudynski would be able to return to his job as an iron worker.  All of the treating physicians noted restrictions in the amount of weight Rudynski can lift and restrictions in the movement in his lower back and gait.

From 1999 to 2006, Rudynski infrequently sought medical treatment from Dr. Gardner. A visit to Dr. Gardner on February 2, 2001 was Rudynski's first visit since March 1999.  At that time Rudynski complained of back pain and Dr. Gardner's notes reflect that Rudynski said he

had been lifting items and shoveling snow from the roof. On September 13, 2001, Rudynski saw Dr. Gardner for low back pain and Dr. Gardner noted that Rudynski had been working around the farm or lawn prior to the onset of this pain.

On November 10, 2001, Rudynski again saw Dr. Gardner for back pain but told Dr. Gardner that this pain started after lifting a heavy object at home the previous day. From November 2001 to December 2004, Dr. Gardner's notes reflect only six visits and at each visit Rudynksi only complained of recent onset of back pain, nothing chronic. There are no treatment notes from December 2004 to November 2005. On November 4, 2005, Rudynski went to Dr. Gardner complaining of recent back pain from the past week.

Dr. Gardner's notes reflect an increase in pain symptoms beginning in May 2006 and underwent an MRI in July 2006. In June 2006, Dr. Gardner completed paperwork for a handicapped parking sticker due to Rudynski's limited mobility and placed him on a lifting restriction. Dr. Gardner's notes from 2006 reflect Rudynski continuing to lift heavy items.

On August 19, 2006, Dr. William A. Shipley, a state agency physician, reviewed Rudynski's medical records and completed a psychiatric review. Dr. Shipley concluded that Rudynski abused alcohol and there was insufficient evidence to support the extent of any mental impairment. On November 30, 2006, Dr. F. Kladder, another state agency physician, affirmed these findings.

On August 21, 2006, Dr. Frank Lavallo, another state agency physician, completed a Physical Residual Functional Capacity ("RFC") Assessment of Rudynski after reviewing Rudynski's medical records. Dr. Lavallo concluded that Rudynski was able to perform light exertional work. He determined that Rudynski would never climb ladders, ropes, or scaffolds,

and that Rudynski would be limited to occasional postural movements. On December 2, 2006, Dr. Mark Ruiz reviewed and affirmed this assessment.

Beginning in 2007 and continuing in 2008, Rudynski began treatment with several new physicians. From September 6, 2007 through February 14, 2008, Rudynski sought treatment from psychiatrist S.L. Pasad Babu. Dr. Babu diagnosed him with depression and prescribed anti-depressants. In February 2008, Rudynski also began a course of treatment with Dr. Eric Stulc, a chiropractor. In August 2008, Rudynski began treatment with Dr. Nancy Link a psychologist. Dr. Link diagnosed Rudynski with alcohol dependence and major depressive disorder. She concluded that Rudynski has limited or no ability to deal with work stress, function independently, and carry out simple job instructions. Dr. Link noted that Rudynski has been suffering from depression on and off since childhood and believed that the severity of his current symptoms directly related to his inability to work and the level of pain he experienced from the injuries sustained from the accident in February 1999.

  2. ALJ Hearing on November 18, 2008

    a. Rudynski's and Lynn Orbin's Testimony

Rudynski testified that he is disabled from an accident in which he hit a dog while on a motorcycle and flipped off, injuring his back. At that time he was an iron worker and had been his entire life. Since the accident Rudynski said he has been unable to return to work. He stated that he currently takes Vicodin, Flexeril, Klonopin, Celexa, Trazodone, and Smethastatin. Whenever he takes Vicodin, Rudynski said that he will be drowsy for the rest of the day.

Rudynski testified that he is not a couch potato and does chores around the house, with the exception of unloading or loading the dishwasher and doing the laundry. He further testified

5

that he waters and tends to his chickens. In the morning he completes stretching exercises to help limber up his back and occasionally during the day he will walk on the treadmill for five to ten minutes. Rudynski affirmed that he is able to dress and groom himself without assistance.

Rudynski further stated that he suffers from depression and it affects his ability to remember short-term things and some days will cause him to feel horrible. He explained that on those days he will feel worthless because he grew up on a farm and is used to being active. He testified that he was seeing Dr. Link for assistance with his depression and that he has been taking anti-depressants for several years. He stated that he believed this medication prevents him from being suicidal.

### b. Vocational Expert's Testimony

The Vocational Expert ("VE") testified that Rudynski's prior job as an iron worker is classified as a skilled, heavy job. The VE did not believe that Rudynski had any transferrable skills. Combining Rudynski's age, education, work background, residual functional capacity. Because of limitations such as his inability to sit for more than six hours, the VE concluded that Rudynski qualified for unskilled light and sedentary jobs. There were approximately 11,000 light jobs in the region. The VE testified that sedentary work involves only simple repetitive tasks, such as the requirements to be a final assembler. The VE further testified that the total number of sedentary jobs in the regional economy was 1,450.

Considering Rudynski's restriction to sit or stand as needed, the VE testified that there were around 550 sedentary jobs available. The VE relied on information found in the Dictionary of Occupational Titles and Selected Characteristics of Occupations. The VE concluded testifying noting that if Rudynski was unable to carry out simple job instructions then there

would be no jobs available and if he missed more than two to three days a month then he would be fired.

B.   Standard of Review

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error. See 42 U.S.C. § 405(g); Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005); Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2003). Substantial evidence means such relevant evidence as a reasonable mind might accept to support such a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1972). A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. Haynes, 416 F.3d at 626. An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003). Further, an ALJ's legal conclusions are reviewed de novo. Haynes, 416 F.3d at 626.

C.   Rudynski's Complaint and Motion for Reversal or Remand

Rudynski must establish that he is disabled to be entitled to benefits under the Social Security Act. See 42 U.S.C. § 423(a)(1)(D). The Act specifically defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Social Security regulations prescribe a five part test to determine if the applicant is disabled. The ALJ must: (1) determine if the applicant is engaged in "substantial gainful activity;" (2) determine the medical severity of the alleged impairment or a combination of impairments; (3) determine if the impairment precludes substantial gainful

activity according to the regulations; (4) determine if the RFC of the applicant precludes engaging in past relevant work; and (5) determine based upon education, work experience, and age if the applicant can engage in any other type of work. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v).

If the ALJ determines at any step that the applicant is disabled, that ends the inquiry. However, if the ALJ cannot make a determination or finds at a certain step that the applicant is not disabled, then the process continues onto the next step. 20 C.F.R. § 404.1520(a)(4).

An impairment or combination of impairments is considered severe if the applicant's physical or mental ability to perform basic work activities is significantly limited. 20 C.F.R. § 404.1521(a). If the applicant does not meet this requirement, then the applicant is not disabled. 20 C.F.R. § 404.1520(c). In order to be considered severe, the impairment must either cause the applicant's death, or has lasted or is expected to last for a continuous period of at least 12 months. 20 C.F.R. § 404.1509. When assessing the severity of an impairment, the applicant's age, education, and work experience are not considered. Id. However, it is still possible for the applicant to have been disabled for a period of time in the past even if the applicant currently does not have a severe impairment. Id.

If the applicant's impairment or combination of impairments meets the requirements outlined in Subpart P, Appendix 1 and also meets the duration requirement, then the applicant is disabled without considering the applicant's age, work experience, or education. 20 C.F.R. § 404.1520(d). Once the ALJ finds that the applicant is not disabled after the first three steps, then the ALJ assesses the RFC. 20 C.F.R. § 404.1520(e). The RFC is the applicant's ability to do physical and mental work activities on a sustained basis despite limitations. Id. Once the RFC is determined, it is compared to the applicant's past relevant work to see if the applicant could still

perform that type of work. 20 C.F.R. § 404.1520(f). If the applicant could still perform past relevant work, then the applicant is not disabled. Id. Past relevant work includes any substantial work performed within the last 15 years. 20 C.F.R. § 404.1560(b)(1). The applicant has the burden to prove the first four steps, but upon reaching step five, the burden shifts to the Commissioner. 20 C.F.R. § 404.1520(e).

Rudynski alleges that the ALJ failed to give proper weight to some treating physicians' opinions and failed to consider all of his impairments in assessing his RFC. Generally, a treating physician's opinion is entitled to controlling weight in determining whether the claimant should receive benefits if it is well supported by medical findings and not inconsistent with other substantial evidence in the record. See 20 C.F.R. § 404.1527(d)(2). Once well supported contradicting evidence is introduced then the treating physician's testimony or evidence is no longer entitled to controlling weight. Id. and see Hofslien v. Barnhart, 439 F.3d 375, 376 (7th Cir. 2006).

An ALJ does not need to specifically address every piece of evidence, but must provide a "logical bridge" between the evidence and his conclusions. O'Connor-Spinner v. Astrue, 627 F.3d 614, 618 (7th Cir. 2010) and Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000). Furthermore, a physician's retrospective diagnosis that relates back to the covered period may be considered only if the diagnosis is corroborated by evidence contemporaneous with the claimant's eligible period. Estok v. Apfel, 152 F.3d 636, 640 (7th Cir. 1998). A diagnosis of a claimant's condition may properly be made even several years after the actual onset of the impairment for which the benefits are being sought. Stark v. Weinberger, 497 F.2d 1092, 1097 (7th Cir. 1974). Upon considering this retrospective diagnosis, it must be viewed in light of the

9

entire record and must establish the existence of a physical impairment. Id.

This Court finds that the ALJ erroneously disregarded the opinions of some of the treating physicians because the retrospective diagnoses of Drs. Stulc, Babu, and Link are permissible because they related back to the time of Rudynski's alleged onset date and are corroborated with contemporaneous evidence on the record. See Estok, 152 F.3d at 640. The ALJ cannot disregard the retrospective diagnoses of Drs. Stulc, Babu, and Link on the basis of the diagnosis date alone as he did because a diagnosis can be made several years after the alleged onset of impairment. See Stark, 497 F.2d at 1097.

However, this error was harmless because the evidence from Drs. Stulc, Babu, and Link, offers nothing new or different than other evidence on the record, which the ALJ considered. Harmless error means that even if the error were corrected it would still not affect the final outcome. See Shramek v. Apfel, 226 F.3d 809, 814 (7th Cir. 2000). The ALJ supported his opinion with evidence from the record, particularly relying on the treatment notes of Dr. Gardner, the only physician to treat Rudynski continuously from the date of his impairment until the date of the ALJ's opinion.

For example, although the ALJ rejected Dr. Stulc's opinion, it simply repeated Rudynski's testimony and Dr. DeLeeuw's treatment notes. Dr. Stulc's notes rely on Rudynski's explanation of his pain, an MRI from 2006, and a physical examination. Dr. Stulc concluded that there was a left lateral disc bulge at L5 with an annular tearing of the L5-S1 disc and there was mild limitation in Rudynski's movement. He further concluded that Rudynski's pain will get worse without treatment. Dr. Stulc recommended exercise and strategic chiropractic manipulative therapy. Dr. Stulc's conclusions do not differ from the conclusions of Dr.

DeLeeuw made in 1999. Dr. DeLeeuw reviewed an MRI from 1999 and noted disc degeneration and a herniation at L5-S1. He further noted a limited range of motion in Rudynski's back. Dr. DeLeeuw ultimately recommended that Rudynski continue lower back exercises and prescribed pain medication. Thus, when the ALJ rejected Dr. Stulc's opinion, he still considered the same information on which Dr. Stulc based his opinion.

Also, although the ALJ did not consider Dr. Babu's notes, because Dr. Babu did not really offer any opinion at all. Dr. Babu only prescribed medication to Rudynski to help treat Rudynski's depression. Dr. Babu's notes offer nothing more than what Rudynski himself testified about at the hearing. In fact, Rudynski testified that Dr. Babu "just prescribed medicine...and doesn't really talk." R. 82. Rudynski further testified that he has been on antidepressant medication from Dr. Gardner for several years. R. 74. Thus, the ALJ correctly rejected Dr. Babu's notes as Dr. Babu did not provide an opinion.

Finally, although the ALJ disregarded Dr. Link's opinion, it repeated testimony given at the hearing and evidence in another treating physician's notes. Dr. Link provided a letter noting treatment for Rudynski for alcohol dependence and major depressive disorder. Her letter continued on and noted a variety of statements made by Rudynski during treatment sessions that represented a "reflection of his pain, loss, and depressive symptoms." R. 340. The letter contained statements from Rudynski explaining that he cannot sit for long periods of time, he cannot stand for long periods of time like in the grocery store line, he feels worthless some days, he cannot do laundry, and he cannot lift the twenty-five pound bag of dog food, among other similar statements. R. 340-41. However, these statements present no new testimony than what Rudynski or his partner Lynn Orbin told the ALJ during the hearing, from what the hospital

11

records contain, and from what Dr. Gardner's treatment notes reflect regarding Rudynski's pain and depression. Thus, when the ALJ rejected Dr. Link's opinion, he still considered the same information on which Dr. Link based her opinion.

The ALJ properly explains his final conclusion regarding Rudynski's RFC as the treatment notes of Drs. Stulc, Babu, and Link offer nothing new or different than testimony from Rudynski and treatment notes of other treating physicians closer to the alleged onset of disability. For these reasons this Court finds that while the ALJ did not properly consider these treating physicians' records, the error was harmless to the overall determination of Rudynski's RFC as their records would not have altered the ALJ's final RFC assessment.

Although the ALJ's opinion does not rely on the opinions of Drs. Stulc, Babu, and Link, the opinion is still supported by substantial evidence from the record. The ALJ relied on the treatment notes from Dr. Gardner, Rudynski's longest treating physician, focusing on the time period of Rudynski's DLI. The ALJ specifically mentioned that Dr. Gardner's notes reflected that Rudynski sought treatment after 1999 infrequently because he had engaged in heavy lifting or other activities causing a strain on his back. Additionally, the ALJ relied on the absence of any treatment notes from any physician for extended periods of time, specifically from December 2004 to November 2005. Also, the ALJ pointed to the fact that although all of the treating physicians rendered him unable to return to iron work, they noted improvement in Rudynski's condition in the summer of 1999 and most no longer considered him disabled. Finally, the ALJ reviewed the state agency physicians' records and the final conclusions that Rudynski was capable of performing at least some light work.

**III. CONCLUSION**

For the above reasons, this Court finds the ALJ's considerations of treating physicians' records and determinations about Rudynski's RFC is supported by substantial evidence. Therefore, Rudynski's motion for reverse or remand is **DENIED** [Doc. No. 1]. Accordingly, this Court **AFFIRMS** the ALJ's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is instructed to term the case and enter judgment in favor of the Commissioner.

**SO ORDERED.**

Dated this 31st Day of March, 2011.

 S/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge